WM. TURNER, Executor v. THOS. DURHAM et al.

WILLS. *Construction.* The widow takes the income of her husband's property for life and one-half of the property absolutely, where the will of the husband gives her all the property, both real and personal, during her life if she live on the plantation and keep house, and directs, in the event she breaks up house-keeping, that the property be sold and the interest paid her yearly during her life, and that his debts be collected and the interest given to her yearly for her support, and further authorizes her to dispose of one-half of the estate at her death, there being no devise over of any part of the income or interest, or of the one-half of the estate mentioned, nor any general residuary devise, the will disposing of the other half of the estate.

FROM SMITH.

Appeal from the Chancery Court at Carthage. W. G. CROWLEY, Ch.

E. W. TURNER, J. J. TURNER and B. F. C. SMITH for complainant.

A. A. SWOPE and J. J. FORD for defendants.

Turner *v.* Durham.

COOPER, J., delivered the opinion of the court.

Sterling Haile made his will in 1860, and died in 1862, leaving a wife but no children. He was an old man at the time of his death, and his widow was of corresponding age, they having been long married. He had several nephews and nieces, one of whom, Malissa Jane Durham, mentioned in the will, had been raised in his family. His widow continued, after the testator's death, on their home place until 1875, when she broke up house-keeping, and died in 1879, having made a will, duly proved and recorded after her death, by which she gave her entire estate to "the Cumberland Presbyterian Church in Tennessee for the use and benefit of the gospel of Jesus Christ, to be used by said church for said purposes as it deems best." The main object of the litigation, upon which the rights of the parties turn, is the construction of the will of Sterling Haile.

He starts out with announcing that he makes and publishes "this my last will and testament, that is to say:

First, That my wife, Rosannah H., have all the beds and bed-clothing forever, to dispose of as she pleases.

Second, My will is that my wife, Rosannah, have all my property, both real and personal, during her life, if she chooses to live on the plantation and keep house; and if she chooses to break up and not keep house, I want her to have choice of one of her negroes to wait on her during her life.

Third, In case of my wife breaking up, my will

is that my property, both real and personal, be sold, and the proceeds be put into the State Bank of Tennessee, and the interest be given to my wife yearly during her life; and my will is that my debts be collected, and the money put in the same bank, and the interest given to my wife yearly for her support.

Fourth, My will is that my wife dispose of one-half of my estate at her death.

Fifth, My will is that after the death of my wife, three of William Haile's daughters, Samantha, Louisa and Josephine, each of them have one hundred dollars of that part of my estate not disposed of by my wife, and the remainder part to be given to Malissa Jane Durham, my niece, and the heirs of her body.

Sixth, I hereby constitute and appoint William Turner my sole executor of this my last will and testament."

Upon the formal execution of a will, the presumption arises that the testator intended to dispose of all of his property. If this presumption is not rebutted by the contents of the will itself, and, a fortiori, if the will as a whole plainly contemplates such a disposition, doubtful words used in particular clauses should be construed so as to accord with the general intent. The opening paragraph plainly implies the execution of a "last will and testament" in its fullest sense, and the entire instrument declares nothing to the contrary, nor it is contended to be otherwise. But one construction put upon the fourth item would have led to a different result, unless the fifth item contains a residuary clause. The first question then arises upon the proper construction of this last item.

Turner v. Durham.

The will first gives the widow certain articles of bedding with the right of immediate disposition. It then gives her during life all the testator's property, real and personal, if she lives on the plantation and keeps house, which she chose to do and did do until 1875. It then provides, in case she breaks up house-keeping, that all the property, real and personal, be sold, and the interest of the proceeds of sale be given to her yearly during life. The money from debts collected is, in this connection, directed to be invested, and the interest given to her yearly "for her support." He then says his will is that his wife dispose of one-half of his estate at her death. And, lastly, he gives, after his wife's death, to three named legatees one hundred dollars each of that part of his estate not disposed of by his wife, adding "and the remainder part to be given to Malissa Jane Durham, my niece, and the heirs of her body." The general intent would seem to be plain that the wife was to have the use or income of his entire estate for life, and the right to dispose of half of the estate at her death. The other half, after paying the three small legacies, was to go to Malissa Durham and her bodily heirs.

The contention of the counsel of Malissa and her children is that the will contemplates an accumulation of income or interest not needed for the support of the widow, and the possibility that the widow might not dispose of the one-half of the estate, and, in these contingencies, that the property should go under the fifth item of the will to Malissa and her children. That item, it will be noticed, gives the small legacies, to

use the testator's own words, out "of that part of my estate not disposed of by my wife, and the remainder part to be given" to Malissa and children. The "remainder part" is plainly the remainder "of that part" not disposed of by the wife. The testator either takes for granted that his will disposes of the one-half of the corpus of the estate, and the whole of the income, or, more probably, supposes that by the previous portion of his will he has actually given to his wife that half of the corpus, as well as the whole of the income. There is nothing to show that he contemplated a residuum of any portion of the half and income thus devised to the wife, nor are there apt words to pass a residuum. Looking alone to the language of the fifth item, it would seem clear that it undertakes to dispose of a specific part of the estate, and that there is no residuary clause.

If this were the unmistakable result of the language used, then any doubtful words in the previous clauses of the will should be construed in accordance with the general intent thus disclosed. It is, however, a legitimate argument to say that the previous clauses show that there may be a residuum beyond the one-half of the estate, and, therefore, the doubtful language of the fifth item should be held to pass that residuum with a view to the general intent of the testator not to die intestate as to any of his property. It is argued, in this view, that the first item of the will does give certain articles to the widow absolutely, that the second and third articles give her only a life estate in the property in one contingency, and the income during

Turner *v.* Durham.

life of the proceeds of the sale of the property in another contingency, and the interest of moneys collected for her support during life, with only a power of disposition at her death of one-half of the property. The argument is legitimate, but not convincing. The testator manifestly intended that his wife should have the income, use and profits of the property, or the interest of the proceeds of its sale "yearly during life," according as to whether it was kept in specie, or converted as contemplated. There is not the least color for limiting the use, profits or interest, as the case may be, to the sum necessary for the widow's support. Neither the second or third item of the will contains any such limitation, and the second item is entirely incompatible with such an idea. And the third item shows that the testator intended she should have the same benefit from the proceeds of the property, namely, its entire income, as she would be entitled to from the property itself. The additional provision touching the interest of money collected does say that it shall be paid to her yearly "for her support." But it does not say that it shall be paid to her only so far as it may be necessary for her support. Nor is there any direction for an accumulation of any portion of this interest as a part of his estate. He clearly meant to give her the entire income derived from his property absolutely, and the right to dispose of the one-half of the corpus of the property.

No doubt, the testator intended that the benefit conferred upon his wife by the will should be secured to her during her life. To this end, he gives her

the income yearly, and couples the right to dispose of one-half the corpus with the words "at her death." But the mode of disposition is not limited. He does not say, as argued by counsel, that she must dispose of it by will. She might, of course, dispose of it by sale or gift. He does not say that the disposition shall be such as will take effect only at her death, although such may have been his intention. The truth is, the testator had two intents, one to give his wife half of his property, and the other to delay the disposition of it by her until she herself would need it no longer. In such a case, our authorities are direct and uniform that the general intent will prevail. In the leading case in our books the will of the testator gave to his wife all his estate, real and personal, "during her life," with full power and authority, "at her death," to dispose of all his personal property, etc., "in any manner she may think proper." It was held that the will gave the personal property included in the power of disposition absolutely to the wife: *David v. Bridgman*, 2 Yer., 557. In the latest case in point, the testator by his will gave to his wife real and personal property "to have and to hold during life, and to make what disposition she may see proper at her death," and it was held that the language used vested the absolute title in the widow: *Troup* v. *Hart*, 7 Baxt. 188. It is impossible to see any distinction between those cases and the one before us. It is not a question of power but of title. A power arises only when the mode, person or object is designated, or there is a devise over if the power is not exercised. A power

of unlimited disposition carries title. In this view it is of no consequence whether the widow's will is effectual to pass the property or not, and no opinion is expressed on that' point.

The chancellor's decree will be reversed, in accordance with the report of the Referees, and a decree entered here in conformity with this opinion. The chancellor's decree and the report of the Referees, so far as they are not affected by this opinion, will be affirmed, and the cause remanded for further proceedings. The costs of this court will be paid by the defendants, the Durhams, and out of their share of the testator's estate. The costs of the chancery court will be subject to the direction of the chancellor.